## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

SAMMIA PRATT, ALICIA DAVIS, and
BRITTANY SAULSBERRY, individually
and on behalf of all others similarly situated,
and MARISOL CASTILLO and HEATHER
BIANCHI,

              Plaintiffs,

      v.

ELISABETH DeVOS, in her official capacity
as Secretary of Education, and UNITED
STATES DEPARTMENT OF EDUCATION,

              Defendants.

Civil Action No. 20-cv-1501-TNM

## DECLARATION OF TOBY MERRILL IN SUPPORT OF PLAINTIFFS'
## MOTION FOR CLASS CERTIFICATION

I, Toby Merrill, declare and state as follows:

1.      I am an attorney for Plaintiffs in the above-captioned matter, and the Director of
the Project on Predatory Student Lending at the Legal Services Center of Harvard Law School
("the Project').

2.      The Project has represented and/or advised hundreds of former for-profit college
students regarding the borrower defense process. The Project's services to students have
included advice on their rights and options with respect to debt incurred at for-profit schools. The
Project has helped hundreds of students submit federal loan discharge applications.

3.      The Project's attorneys have extensive experience in APA and class action
litigation in state and federal court. For example, counsel at the Project have represented student
borrowers in class actions, including: *Vara v. DeVos*, No. 19-cv-12175 (D. Mass., filed on Oct.
22, 2019); *Sweet v. DeVos*, No. l9-cv-03674 (N.D. Cal, filed on June 25, 2019); *Calvillo Manriquez*

*v. DeVos*, No. 17-cv-07210 (N.D. Cal., filed on Dec. 20, 2017), Case No. 18-16375 (9th Cir., filed July 24, 2018); *In re ITT Educational Services*, No. 16-07207-JMC- 7A (S.D. Ind. Bankr., class action adv. proceeding filed on Jan. 3, 2017); and *Salazar v. King*, No. 1:14-cv-01230 (S.D.N.Y., filed on Feb. 24, 2014). Counsel at the Project have also represented, and are currently representing student borrowers in APA cases, including: *Vara*, *supra*; *Sweet*, *supra*; *Calvillo Manriquez*, *supra*; *Carr v. DeVos*, No. 19-cv-06597 (S.D.N.Y., filed July 16, 2019); *Bauer v. DeVos*, No. 17-cv-1330 (D.D.C. filed on July 6, 2017); *Dieffenbacher v. DeVos,* No. 17-cv-342 (C.D. Cal., filed on Feb. 23, 2017); and *Williams v. DeVos*, No. 16-cv-11949 (D. Mass., filed on Sept. 28, 2016).

4.    Undersigned counsel, along with co-counsel, have knowledge of, and familiarity with, the relevant laws and regulations concerning federal student loans and borrower defense.

5.    Undersigned counsel, along with co-counsel, are not aware of any potential conflicts of interest with members of the proposed class.

6.    Undersigned counsel, along with co-counsel, are prepared and well-equipped to vigorously prosecute this case.

7.    None of the named plaintiffs in this case has asked the Department of Education for reconsideration of their borrower defense decisions.

8.    None of the named plaintiffs in this case is a member of the class in *Calvillo Manriquez v. DeVos*, No. 17-cv-07210 (N.D. Cal., filed on Dec. 20, 2017).

9.    Attached is a true and correct copy of a letter  from counsel for the Department of Education (without the enclosure that accompanied it) that my office received and subsequently docketed in *Sweet v. DeVos*, No. 19-cv-3674-WHA (N.D. Cal. Aug. 20, 2020), ECF No. 108-2.

I declare under penalty of perjury that the foregoing is true and correct.

Dated: _____September 16, 2020

_____
Toby Merrill

2

**Exhibit 1**



**U.S. Department of Justice**

Civil Division
Federal Programs Branch

1100 L Street, N.W.
Washington, D.C. 20530

---

Kathryn C. Davis                                        Tel: (202) 616-8298
Senior Trial Counsel                                    Kathryn.C.Davis@usdoj.gov

August 10, 2020

**<u>VIA EMAIL</u>**

Eileen Connor
Legal Services Center of Harvard Law School
122 Boylston Street
Jamaica Plain, MA 02130

   Re:  <u>*Sweet v. DeVos*</u>, No. 19-cv-3674-WHA (N.D. Cal.)

Dear Eileen,

   We write in regard to your letter of July 24, 2020, in which you requested information about the Department of Education's issuance of borrower defense decisions since December 2019. We appreciate the opportunity to address the matters identified in your letter, as the parties continue to work toward final approval of the settlement. In light of that shared interest, the Department provides the following responses to your specific requests:

  1. Of the 10,133 applications that have been granted since December 1, 2019, the number that have received relief determinations;

  <u>Response</u>: All 10,133 eligible applications received a relief determination.

  2. Of those receiving relief determinations, the number that have been designated for 0% relief;

  <u>Response</u>: Of the 10,133 eligible applications, 17 applications have been designated for 0% relief.

  3. The names of the schools or school groups for which ED has established a category of eligible borrower defense claims;

  <u>Response</u>: The Department has established categories of eligible borrower defense claims for the following school groups: Corinthian and ITT.

4. The names of schools or school groups for which ED has made "Step 1" determinations that a borrower is eligible for relief;

<u>Response</u>: The following school groups have "Step 1" determinations that the borrower is eligible for relief: Corinthian and ITT.

5. The names of schools or school groups for which ED has made "Step 1" determinations that a borrower is *not* eligible for relief;

<u>Response</u>: As of July 29, 2020, the Department has made "Step 1" determinations that individual borrowers from the enclosed list of schools/school groups are *not* eligible for relief. The list includes all schools/school groups where at least 10 individual borrowers have a "Step 1" determination that they are *not* eligible for relief. Consistent with general practice, as reflected in the parties' Settlement Agreement (§ IV.B.4), the Department does not release the names of schools/school groups with less than 10 individual borrowers to protect the identity of the individual borrowers.

6. The protocols under which ED has denied borrower defense claims other than those appended as Exhibits 15 through 18 to the Nevin Declaration, ECF No. 56-4.

<u>Response</u>: The Department has been adjudicating claims using both general and school-specific protocols. As of July 30, 2020, it determined that individual borrowers from the following schools/school groups were *not* eligible for relief using protocols specific to the evidence in the Department's possession related to the schools/school groups: Ashford University, Career Education Corp., Charlotte School of Law, Concorde Career Colleges, DeVry, ECA College, Education Management Corp., ITT Tech, JTC Education Inc., Kaplan Inc., Lincoln Technical Institute Inc., McCann School of Business and Technology, Miami - Jacobs Career College, Star Career Academy, University of Phoenix, Walden University, and Westwood College.

More generally, your letter expressed a concern "that ED is denying applicants from schools and school groups where ED has substantial—not scant—evidence in support of the claims, where ED is clearly aware of existing evidence of misconduct, and where borrowers themselves have provided detailed and extensive evidence." Connor Ltr. at 3. The merits of borrower defense decisions are, of course, not at issue in this action. However, to the extent it impacts your assessment of the settlement's benefit to the class, the Department would like to provide some further context regarding the borrower defense decisions discussed in your letter. Most importantly, the Department is not "issuing sweeping and blanket decisions on borrower defense applications without considering the evidence" in order to meet the timelines of the Settlement Agreement. *Id*.

As previously explained in this litigation, in an effort to maximize adjudications, the Department's Borrower Defense Unit ("BDU") has prioritized the streamlined Corinthian job placement rate ("JPR") claims and applications that are likely to be denied. *See* Declaration of

Colleen Nevin, Nov. 14, 2019, ¶ 66. The latter includes "applications from borrowers who did not provide any evidence and who attended schools for which the BDU is not aware of any evidence that would support approval of the applications." *Id.* As reflected from the enclosed list, there are borrowers from numerous schools/school groups whom the Depatment determined ineligible on this basis.

To be sure, the enclosed list also includes schools/school groups for which the BDU has evidence of misconduct and from which the Department has granted borrower defense applications of individuals who attended those schools (such as Corinthian and ITT). That does not necessarily mean, however, that every individual borrower who attended one of those schools will be eligible for relief. The Department may deny an application because the borrower has made only broad allegations about a school without specifically alleging any misrepresentation made to him or her (or a breach of contract or judgment against the school), and thus has failed to state a claim for a borrower defense. Where a specific claim is stated, the Department may deny an application where there is insufficient evidence to support the claim. Denials can occur on this basis notwithstanding that the Department has significant evidence related to particular schools. For example, a borrower's allegations may relate to time-periods, campuses, or programs that are not covered by the evidence in the BDU's possession related to the school at issue. In such cases, the evidence obtained by the BDU—which it certainly considers with respect to the school—is simply not relevant to or does not provide a basis for approving a specific individual borrower's application. And if that borrower's application does not on its own provide sufficient evidence to corroborate the borrower's claim, the Department will deny the application.

Please keep in mind that the Department can base its decisions only on evidence in its possession. It obtains such evidence in a variety of ways—*e.g.*, record requests issued during the borrower defense fact-finding process, evidence received from federal agencies and state attorneys general, and from borrowers themselves. The Department cannot approve borrower defense applications based on a mere "aware[ness]" of misconduct by a school or based solely on the fact that a school has been subject to other "private legal, regulatory, and/or public enforcement actions for unlawful behavior." Connor Ltr. at 3.

As to your concern that "ED is denying applications . . . where borrowers themselves have provided detailed and extensive evidence," *id.*, it is difficult to respond to this allegation without more specific information about the applications to which you refer. In the Department's experience, however, it is not typical for a borrower to submit "extensive evidence" on their own, and most of the applications where borrowers have done so are still pending. In any event, to the extent that a borrower disagrees with the Department's decision, the Department provides detailed guidance on the Federal Student Aid website about how to request reconsideration of that decision or to submit a new application if the borrower has a different basis for a borrower defense.

We understand and appreciate your concern that the decisions issued since December 2019 have largely been denials. The ratio of denials to approvals may potentially improve over

3

time as the BDU completes its analysis of evidence related to additional schools and develops additional review protocols for those schools. Regardless, the Department is not prioritizing the speed of adjudications over its careful and thorough review of borrower defense applications, nor has it prejudged the merits of borrowers' claims. As you know, the parties negotiated extensively about the adjudication deadlines set forth in the Settlement Agreement and arrived at a mutually agreeable timeline, which provides the Department more time than the 12-month period requested in Plaintiffs' summary judgment motion.

The Department has always had the goal of adjudicating all borrower defense applications, and doing so in a timely manner, independent of this lawsuit. The Department's efforts over time to achieve that goal have included significant time spent formulating a new relief methodology on more than one occasion, spending significant litigation resources to defend its ability to continue adjudicating applications using its methodology, and adding significant additional resources over time to the processes for resolving each borrower defense application. The increased adjudication rate in recent months is the fruit of the Department's efforts, not the result of a lower level of care by the Department regarding borrower defense adjudication.

Please feel free to contact us if you would like to discuss this matter further.

Sincerely,

Kathryn C. Davis

Enclosure

4